1                   UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF NEW YORK (BROOKLYN)

3    UNITED STATES OF AMERICA,
                                        Case No. 1:21-cr-00615-EK-1
4                   Plaintiff,

5    v.                                 Brooklyn, New York
                                        December 5, 2022
6    DAMIAN LUNA CRUZ,                  10:32 a.m.

7                   Defendant.

8
                     TRANSCRIPT OF SENTENCING HEARING
9              BEFORE THE HONORABLE ERIC R. KOMITEE
                 UNITED STATES DISTRICT COURT JUDGE
10
     APPEARANCES:
11   For the Plaintiff:            Nina C. Gupta, Esq.
                                   U.S. Attorney's Office
12                                 271 Cadman Plaza East
                                   Brooklyn, NY 11201
13
     For the Defendant:            Michael P. Padden, Esq.
14                                 Federal Defenders of New York,
                                   Inc.
15                                 One Pierrepont Plaza, 16th Floor
                                   Brooklyn, NY 11201
16
     Interpreter:                  Maristela Verastegui
17
     Also Appearing:               Darren Galerkin, USPO
18
     Clerk:                        Andrew Jackson
19
     Court Recorder:               Electronic Sound Recording
20
     Transcription Service:        Chris Hwang
21                                 Abba Reporting
                                   PO Box 223282
22                                 Chantilly, Virginia  20153
                                   (518) 302-6772
23

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1                                    <u>**INDEX**</u>

2

3                                                    <u>Page</u>

Sentencing                                26

Motion, granted                           28

Motion, granted                           29

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              (Call to order at 10:32 a.m.)

2              THE COURT:  I apologize for keeping everybody this

3   morning.  Dealing with a handful of last minute unforeseen and

4   unforeseeable eventualities.

5              MR. PADDEN:  Things happen.

6              THE COURT:  Yeah.

7              MR. PADDEN:  Good morning.

8         (Counsel confer)

9              THE CLERK:  Criminal cause for sentencing, the United

10  States of America v. Damian Luna Cruz, docket number 21-CR-615.

11             Would you all please state your appearances for the

12  record, starting with the Government?

13             MS. GUPTA:  Good morning, Your Honor, Nina Gupta for

14  the United States.

15             MR. PADDEN:  For Damian Luna -- oh, I'm sorry,

16  Probation.  No, go ahead.

17             MR. GALERKIN:  Darren Galerkin with U.S. Probation,

18  Your Honor.  Good morning.

19             THE COURT:  Good morning.

20             MR. PADDEN:  And for Damian Luna Cruz, Your Honor,

21  Michael Padden, Federal Defenders.  Good morning.

22             THE COURT:  Good morning, Mr. Padden.

23             And, Mr. Luna Cruz, good morning to you.

24             THE DEFENDANT (through interpreter):  Good morning.

25             THE CLERK:  Would the interpreter please state her
```

1    appearance for the record?

2                    THE INTERPRETER:  Good morning, my name is Maristela

3    Verastegui, previously sworn.

4                    THE COURT:  It's a little in and out.

5                    THE INTERPRETER:  Maristela Verastegui, previously

6    sworn.

7                    THE COURT:  Okay.  So I heard that.  I don't know if

8    the audio picked it up, but the interpreter has hopefully

9    stated for the record that she was previously sworn.  Thank

10   you.

11                   Okay, Mr. Luna Cruz, can you hear the Spanish

12   interpretation?

13                   THE DEFENDANT:  Yes.

14                   THE COURT:  Okay.  If at any point, something is said

15   that you don't fully understand, raise your hand and let us

16   know that.  If you want to meet -- a minute at any point to

17   speak with your attorney, raise your hand and let him know that

18   and he'll let the Court know that.  It's important that you

19   hear and understand everything that is said here today.  Okay?

20                   THE DEFENDANT:  Yes.

21                   THE COURT:  All right, thank you.  So we're here as

22   you all know for sentencing in connection with this case.  Mr.

23   Luna Cruz pleaded guilty to one count of Conspiracy to

24   Distribute and Possess with Intent to Distribute Cocaine.

25   The -- it was Count 1 of the indictment.  I'll say a word about

1    the guilty plea at the outset.

2            Let me just describe, Mr. Luna Cruz, the order in

3    which we will do things today.  So, first as I mentioned, I'll

4    say a word about the guilty plea.  Second, I want to list all

5    the submissions that I've received and considered for

6    sentencing.

7            And the purpose of listing everything I have from

8    your lawyer, from the Government, from the Probation Department

9    is to make sure that I have everything that I should have and

10   that all of us are working off the same information here.

11           Next, we'll talk about the Pre-sentence Report that

12   the Probation Department issued in this case.  And

13   specifically, I will determine what the Sentencing Guidelines

14   range is under the United States Sentencing Guidelines system.

15           Those Guidelines are advisory, which means I'm not

16   obligated to follow them, but I am obligated to determine what

17   the Guidelines range for this case is, even if I don't

18   necessarily have to follow it.  And I will consider the

19   advisory guidelines, as well as any departures that might apply

20   in this case.

21           After I have laid all that out, I'll give the

22   attorneys for both sides an opportunity to speak.  And then,

23   Mr. Cruz, you will have the opportunity to make a statement to

24   the Court if you wish before I impose sentence.

25           Once all of that has happened, I will proceed to

1   review what we call the 3553(a) factors.  Those are the factors

2   that federal law requires me to consider in order to determine

3   the appropriate sentence.

4         And after that, I will impose sentence.  Do you

5   understand, Mr. Luna Cruz, the process that I've laid out?

6         THE DEFENDANT:  Yes.

7         THE COURT:  Thank you.  Do you have any questions at

8   this point?

9         THE DEFENDANT:  No, it's okay.

10         THE COURT:  I take it the Government has no victim --

11         MS. GUPTA:  No, Your Honor.

12         THE COURT:  -- statements in this case?

13         MS. GUPTA:  No, thank you.

14         THE COURT:  All right, so a word about the guilty

15   plea.  Mr. Cruz pleaded guilty on May 2nd of this year before

16   Magistrate Judge Reyes.

17         The plea was to Count 1 of the indictment, which

18   charged a Conspiracy to Distribute and a Conspiracy to Possess

19   with Intent to Distribute Cocaine in violation of 21 U.S. Code

20   Section -- sorry, Sections 841 and 846.

21         I accepted the guilty plea on June 24th of this year.

22         Turning next to the documents I have in my

23   possession, I reviewed the following in preparation for this

24   sentencing hearing.

25         First, the Pre-sentence Report dated October 7th,

1    2022.  Second, the Probation Department sentence recommendation

2    dated the same day.

3              Does the Defense have the sentencing recommendation

4    --

5              MR. PADDEN:  I don't think --

6              THE COURT:  -- from Probation?

7              MR. PADDEN:  I don't believe I do.

8              THE COURT:  Okay.  So, Mr. Luna Cruz, the Probation

9    Department is represented here today by Mr. Galerkin, who you

10   see at the table opposite you.

11             The Probation Department, even though they're sitting

12   at the same table as the Prosecution, they don't work for the

13   Prosecution.  They work for the Court.  And they prepare the

14   Pre-Sentence Report as you know.  They also make a sentencing

15   recommendation to the Court in every case.

16             And just like the Sentencing Guidelines, I'm not

17   bound to follow the sentence recommendation that Probation

18   makes, but the Probation Department sees every sentencing in

19   the whole district.  They have a lot of context, a lot of

20   information about other cases.

21             And I do take their recommendations into account.

22   And because of that, it is my practice to inform the Defense of

23   what the Probation Department's recommendation is.  And I will

24   do that at a later point in this case.

25             I have a sentencing memorandum from the Defense,

1    which is dated November 21st.  And attached as exhibits are

2    four letters of support from Mr. Luna Cruz's family.  Those are

3    handwritten letters that have been translated by and large.

4            I have a number of medical records as well as

5    translations of those also attached to the Defense sentencing

6    memorandum.  And I have the Government's sentencing memorandum

7    dated November 28th of 2022.

8            From the Government's perspective, is there anything

9    else I have not listed, but that I should have?

10           MS. GUPTA:  No, Your Honor.

11           THE COURT:  From the Probation Department's --

12           MR. GALERKIN:  No, Your Honor.

13           THE COURT:  -- perspective?

14           And from the Defense?

15           MR. PADDEN:  Oh, Judge, there is one additional

16   thing.  So I mean, you have everything that was sent to you.  I

17   had actually met with Mr. Luna Cruz last week with an

18   interpreter at the MDC.  And he had mentioned that he had

19   earned some certificates of achievement at the MDC.  I hadn't

20   received them.  He didn't have them with him that day.  And I

21   told him to bring them to Court with him next week.

22           I went in and greeted him this morning while we were

23   waiting.  I totally forgot.  And he came out.  He didn't say

24   anything either, but he just walked into the courtroom with a

25   envelope, which reminded me that I'd asked for that.

1          They're pretty simple.  If I may just -- I'll show

2     them to the Government and then hand them up to the Court --

3          THE COURT:  Please.

4          MR. PADDEN:  -- so you can see them.

5          THE COURT:  Thank you.

6       (Counsel confer)

7          MR. PADDEN:  , Judge may I approach?

8          THE COURT:  Please.  Thank you.

9          Okay, so I have just been handed by Mr. Padden, one,

10    two, three certificates, I think.  The first one is printed on

11    very heavy stock, but it appears to be one document.

12          So the first is a certificate of completion for a GED

13    language math class.  It's identified as an ACE course

14    administered by the U.S. Department of Justice.

15          The second is a certificate from the Recreation

16    Department at MDC Brooklyn that certifies that Mr. Luna Cruz

17    has successfully completed Century Card making class.

18          And the third is also from the MDC Brooklyn,

19    indicating Mr. Luna Cruz's completion of the *sentimientos y*

20    *comportamiento* workbook.  I apologize for my Spanish

21    pronunciation.

22          What's the third -- what is this workbook, Mr.

23    Padden, if you know?

24          MR. PADDEN:  I don't, Judge.

25          THE COURT:  Or can say?

1        MR. PADDEN:  I think it's in connection with the

2   others, but I'll double check.

3        (Counsel confers with the Defendant)

4        MR. PADDEN:  It was a focus on how to be a better

5   parent and family member, Judge.

6        THE COURT:  Terrific.

7        MR. PADDEN:  Yeah.  Had it in other cases where it's

8   just listed as Parenting (indiscernible).

9        THE COURT:  Okay, thank you.  And that's good to

10  know.  And obviously, Mr. Luna Cruz's status as a parent is

11  something that comes through clearly in the Pre-sentence Report

12  as well.

13        MR. PADDEN:  Okay, can I have a moment?  We have a

14  lapse in translation.

15        THE COURT:  Have you -- is there anything you want us

16  to repeat?

17        THE DEFENDANT:  Yes.

18        THE COURT:  So I was talking about the certificates

19  that I've received.  I understood the first two just from

20  the  -- oh, there is a fourth, I'm sorry.  The fourth is a

21  *cresimiento* (phonetic) personal workbook and maybe the Defense

22  --

23        MR. PADDEN:  It's probably the same, Judge.  These

24  are personal family and parenting courses.

25        THE COURT:  Okay.  So, yes, Mr. Luna Cruz, my

1    question was about two of the certificates, the titles of which

2    I did not immediately understand because they're in Spanish.

3         And Mr. Padden clarified for me that they relate to

4    parenting skills, which I appreciate.  And I mentioned that the

5    Pre-sentence Report and the other sentencing submissions that

6    I've gotten from the Defense speak to your status as a parent.

7    And not just that, but your family relationships with all

8    family members.  And I was just saying that that came through

9    very clearly in the sentencing submissions that I have.

10        Okay, so Mr. Padden, have you and your client read

11   and discussed the Pre-sentence Report?

12        MR. PADDEN:  Yes, sir.

13        THE COURT:  Have you had a sufficient opportunity to

14   discuss any potential issues?

15        MR. PADDEN:  I think we have.

16        THE COURT:  Okay.  And putting aside the Guidelines

17   calculation itself, do you have any objections to the PSR?

18        MR. PADDEN:  No, sir.

19        THE COURT:  Is the Government seeking an evidentiary

20   hearing on any issue?

21        MS. GUPTA:  No, Your Honor.

22        THE COURT:  Is the Defense?

23        MR. PADDEN:  No.

24        THE COURT:  Okay, so turning next to the advisory

25   guideline calculation and ranges, the parties are using the

1    2021 version of the Guidelines manual.  No objections to the

2    PSR have been filed, including to the Guidelines calculation.

3    I therefore adopt the Pre-sentence Report in its entirety.

4         The offense level calculation is therefore as

5    follows.  We have a base offense level calculated under Section

6    2D as in delta 1.1 of the Guidelines.  And therefore, a base

7    offense level of 24.

8         The parties agree that the Defendant meets the

9    criteria for safety valve relief set forth in Section 5C1.2 of

10   the Guidelines, 5C1.2(a).  And therefore, two-level reduction

11   is appropriate under Section 2D1.1(b) as in bravo 18.

12        There's a two-level reduction, again, agreed to by

13   both parties, for minimal role under Section 3B as in bravo 1.2

14   little (b).

15        So we subtract two levels for that.  And we subtract

16   on the Government's motion three levels for acceptance of

17   responsibility.

18        That leaves us, if I'm doing the math correctly, with

19   a total offense level of 17.  Does the Government agree with

20   that calculation?

21        MS. GUPTA:  Yes, Your Honor.  The only thing I would

22   note is that it was a minor participant role rather than a

23   minimal participant role.

24        THE COURT:  Yes.

25        MS. GUPTA:  That resulted in a minus 2.

1          THE COURT:  Thank you.

2          MS. GUPTA:  Thank you.

3          MR. PADDEN:  That's acknowledged.  I heard it, too.

4          THE COURT:  Yeah.  Okay, Mr. Padden, you otherwise

5    agree that we end up at offense level 17?

6          MR. PADDEN:  I do, Your Honor.

7          THE COURT:  And I think we're all agreed that Mr.

8    Luna Cruz has no criminal convictions of which anyone is aware,

9    and therefore, is in criminal history Category 1.

10          Does the Government agree with that as well?

11          MS. GUPTA:  Yes, Your Honor.

12          THE COURT:  And the Defense?

13          MR. PADDEN:  Yes.

14          THE COURT:  All right, so based on a total offense

15    level of 17 and criminal history Category 1, the Guidelines

16    provide for a range of imprisonment of 24 to 30 months.

17          The Guidelines also provide a range of Supervised

18    Release of 2 years to 5 years under Section 5D1.2(a)(1).

19          Ms. Gupta, is this a case in which Supervised Release

20    is required by statute if you know?

21          MS. GUPTA:  I don't believe so, Your Honor.

22          THE COURT:  I say that because of Section 5D as in

23    delta 1.1.

24          MS. GUPTA:  I apologize.  I believe it is statutorily

25    required.

1    MR. GALERKIN:  Yes, Your Honor, I believe it's

2  a -- must be imposed.

3    THE COURT:  Okay.  Section 5D1.1 of the Guidelines

4  speaks to Supervised Release in cases where it's expected that

5  the Defendant will be deported, but only applies to cases in

6  which Supervised Release is not required by statute.  And I'm

7  being advised that that is not the case here today.

8    Mr. Padden, do you have a view on that?

9    MR. PADDEN:  Yeah, I'll go on this, Judge, I do

10  believe it is required.

11    THE COURT:  Yeah.  I will, I think -- well, I'm

12  inclined I should say to impose a term of Supervised Release of

13  2 years, which is the bottom of the Guidelines range, but also

14  to say that it is not my intention or desire that the Defendant

15  be kept in the United States to serve any part of that term of

16  Supervised Release.

17    And so I think we all hope that Supervised Release is

18  academic in the circumstances, but we can talk about that more

19  when we get to the imposition of sentence.

20    The Guidelines provide for a fine range here, a fine

21  range of $10,000 at the low end to $5 million at the high end,

22  which seems like quite a wide range of outcomes.  Is that

23  correct?

24    MR. PADDEN:  It's there for those much higher up on

25  the chain than Mr. Luna Cruz was.

1      THE COURT:  Okay.  Well, let me just ask Probation.

2  What is the Guidelines fine range in this case?  I'm talking

3  about the Guidelines, not the statute.

4      MR. GALERKIN:  Your Honor, I have it here as 10,000

5  to $5 million.

6      THE COURT:  What paragraph is that?

7      MR. GALERKIN:  Paragraph 67.

8      THE COURT:  Yeah, I'm looking at it.  Okay.  Yeah,

9  the Guidelines are $5 million at the high end we believe

10  because the Guidelines incorporate the statute here.

11      They say that if the Defendant is convicted under a

12  statute authorizing a maximum fine greater than $500,000, then

13  the Court may impose under the Guidelines a fine up to the

14  maximum authorized by the statute, which in this case is 5

15  million.  Again, I think this is probably academic in this case

16  even though obviously we want to get it right.

17      Okay, so I mentioned, Mr. Luna Cruz, that I have a

18  recommendation from the Probation Department as to the

19  appropriate sentence of incarceration in this case and that it

20  would put it on the record.

21      Probation is recommending 24 months in custody, 2

22  years in custody, and also 2 years of Supervised Release.

23      Again, that's not binding on me.  And the Probation

24  Department also recommends certain special conditions of

25  Supervised Release that I will mention later in the proceeding.

1    So that's the Guidelines.

2              There are also statutory provisions that apply to

3    your sentence.  The statutory maximum for this conviction is

4    40, 4-0 years.

5              There is a statutory minimum of 5 years, but because

6    the Defendant meets the statutory requirements for the safety

7    valve, that minimum does not apply, and instead, I'm free to

8    impose the sentence without regard to the statutory mandatory

9    minimum.

10             The Supervised Release range is up to 5 years by

11   statute.  And as I mentioned before, the fine range under the

12   statute is up to $5 million.

13             In addition to all that, a special assessment of $100

14   is mandatory.  So I will have to impose a $100 special

15   assessment.

16             Okay, so that is where we stand in terms of how the

17   U.S. Sentencing Guidelines apply to this case and how the

18   statutes applicable to Mr. Luna Cruz's conviction apply to this

19   case.

20             And as I mentioned earlier, I've reviewed the written

21   submissions from the parties.  But Mr. Padden, at this point,

22   do you wish to be heard?

23             MR. PADDEN:  Just briefly, Judge.  I think my

24   arguments are laid out in my paperwork.  The only thing I

25   wanted to do is just focus for a moment because both Probation

1  and the Government did on this so-called prior deportation in

2  early 2021, I believe it was, and then coming back before

3  committing the crime here.

4        I just want to make sure.  I -- probably obvious to

5  the Court, but just in case you need reminding.  This was not a

6  judicial deportation.  He was basically picked up by the border

7  patrol in Arizona and sat in their office for about 5 hours.

8  They drove him to the border and told them to go back to

9  Mexico, okay.

10        So he didn't have the full panoply of rights being

11  given to him, explanations being given to him, warnings given

12  to him.

13        He basically -- it was almost like a, you know, a

14  child's game of hide and go seek as far as -- we found you, go

15  back to Mexico, don't come back.  But nothing as formal as the

16  deportation proceedings we might otherwise be accustomed to or

17  aware of.

18        So it wasn't like he had seen a judge and been told

19  what would happen if he'd come back again.  And it's referred

20  to as an illegal re-entry in various places.  I just want it

21  clear that -- what really happened here.

22        I get it, probably has not great legal significance,

23  but some practical sense of, you know, how this all -- the

24  background for this lay.

25        And he obviously did come back several months later.

1  And basically, you know, following the hope that he would be

2  able to provide for his family better by working here in the

3  United States.

4         Whether it be toiling in the fields, or

5  landscape -- he was working for landscaping companies.  He was

6  doing manual labor.

7         And then, he was directed towards from the Las Vegas

8  area, where he was doing it towards North Carolina where he

9  assumed that he would be doing that as well.

10         And -- but was convinced by others that he could make

11  more money if he would do this favor for them.  They're the

12  ones that actually gave him a truck that is listed here if he

13  would go up to New York and accept delivery of a package.

14         He did so knowing.  I mean, it was never said -- he

15  knew what was going on.

16         THE COURT:  Right.

17         MR. PADDEN:  He understood what he was doing.  But

18  again, the motive was the same.  It wasn't for some lavish

19  personal lifestyle.  It was to get any money he could to send

20  back to his suffering family.

21         And as I indicated a rather poor -- even poorer than

22  normal section of Mexico.  So that's what that's all about.

23         There was also mention of the truck and the business

24  incorporated.  And basically, and the so-called business that

25  he had, which he really made no money from.  He was hoping to

1    eventually get, you know, earn money as a landscaper or worker.

2            Did he -- the incorporation was done simply to get

3    commercial license plates for the truck.  There was no extended

4    benefit from this incorporation.

5            It impacted -- by his account, he made no money in

6    what he hoped was going to be work as a landscaper yardwork in

7    the future, but that's it.  Those are the only things I thought

8    might be a little confusing or just require a little more

9    explanation than that was obvious.

10            Other than that, Judge, poor guy from a poor family

11    in Mexico trying to make money to send back to support them.

12    Made obvious mistakes, series of mistakes.  Should have never

13    gotten involved in the drug business so to speak.  He knows it.

14    He certainly understands it.

15            He spent 13, he spent 13 months at the MDC under, you

16    know, fairly onerous circumstances.  Probably not quite as bad

17    as they were 2 years ago --

18            THE COURT:  Right.

19            MR. PADDEN:  -- but still pretty bad.  I mean,

20    it's -- and I can attest to that and I think the Court has

21    heard enough about what it's like there now, regular

22    quarantines, somebody in the unit gets Covid, they lock down.

23    Access to commissary is limited.  Access to -- well, it

24    wouldn't matter for him so much because he has no family here.

25            But that in and of itself is onerous.  He didn't have

1    family to come visit him.  And even if he did, who knows with

2    the various lockdowns that seem to regularly occur --

3              THE COURT:  Right.

4              MR. PADDEN:  -- how much he would have seen of them.

5    But in any event --

6              THE COURT:  Even for non-Covid reasons.

7              MR. PADDEN:  Yeah, yeah.

8              THE COURT:  Yeah.

9              MR. PADDEN:  No, it's been a rough 13 months.  I

10   would hope and think frankly that he has learned his lesson.  I

11   mean, he has always presented himself and I think you probably

12   got a sense just from limited time you've seen him here, he's a

13   very nice person.  He's a real gentleman.  He's always been

14   extremely respectful and appreciative of me and anything that

15   I've done for him.

16             And I think he now knows what the consequences are.

17   And certainly how much worse it would be if he were to ever do

18   something so foolish again and how much he misses his family

19   and how rough that's been on him to be away from them right

20   now.

21             That seems to be his highest motiving factor to get

22   back to Mexico and not do anything as foolish as he's done this

23   time.

24             And I think he's otherwise a pretty decent guy and

25   cares a lot about his family.  And as you can see, his family

1    cares about him.

2           So he made a mistake, a big mistake.  He's paid for

3    it, I think, already given particularly the time, but in

4    connection with the conditions that he has been incarcerated

5    under at the MDC.

6           And I would ask the Court to seriously consider

7    sentencing below the Guideline range if you take into account

8    those factors, put him back on track with his family as soon as

9    possible.

10          THE COURT:  Yeah, thank you.  Just a couple

11   questions.  So I did read the Pre-sentence Report at least to

12   imply if not to say outright that they believed Mr. Luna Cruz

13   to have committed the offense of illegal re-entry in the sense

14   of he could have been prosecuted for if the elements would have

15   been satisfied.  Is that not the case based on what you're

16   talking -- what you're saying about the deportation?

17          MR. PADDEN:  I don't think it is, Judge, because

18   there was no prior deportation.

19          THE COURT:  There was a voluntary removal?

20          MR. PADDEN:  Yeah.

21          THE COURT:  Okay.  And then, do you have a sense of

22   how much additional time Mr. Luna Cruz might be expected to

23   serve in immigration custody in connection with removal

24   proceedings this go around?  I'm hearing a fairly wide range of

25   estimates.

1          MR. PADDEN:  Yeah, my sense, Judge, and things have

2     changed a lot since -- we used to kind of all know it back

3     before Covid, the last I heard that -- of anybody in particular

4     was approximately 30 days.

5          THE COURT:  Okay.

6          MR. PADDEN:  So I think they -- there certainly will

7     be administrative time that he would spend in immigration

8     custody before it happens.

9          THE COURT:  All right, so you wouldn't expect him to

10    be home for Christmas even if he were to be sentenced to time

11    served?

12         MR. PADDEN:  Yeah, I don't expect it.  I mean,

13    wonderful if he was, but I'm doubtful.  I think in the not only

14    the coincidence of the calendar, but I think it also slows down

15    the process, too, this time of year.

16         THE COURT:  Right.

17         MR. PADDEN:  Yeah.

18         THE COURT:  Understandably.

19         MR. PADDEN:  Yeah, so I think he will be spending,

20    unfortunately, under any circumstances Christmas in custody.

21         THE COURT:  Okay, anything else you wanted to say?

22         MR. PADDEN:  No, Judge.  I think he wants to say a

23    few words, but I'm good unless you have any questions at the

24    end.

25         THE COURT:  That answers all my questions.  I'll hear

1    briefly from the Government if you want to be heard and then

2    from the Mr. Luna Cruz himself.

3              MS. GUPTA:  Your Honor, unless the Court has any

4    questions, we would rest on our papers.

5              THE COURT:  No, thank you.  And I appreciate your

6    paper submissions.

7              Mr. Luna Cruz, do you wish to make a statement at

8    this point?

9              THE DEFENDANT:  First of all, I want to apologize for

10   what I did.  I was just looking for a better future for my

11   family, for my daughter.  I was desperate and that led me to

12   commit that mistake.  And all I can do is to ask you to forgive

13   me.

14             I understand that I did wrong.  All I can ask of you

15   is the opportunity to go back to my family.  I love them

16   dearly.  I miss them deeply and they need me.

17             My daughter is only 3 years old and this is very hard

18   on my wife.  I can only apologize and ask all of you to forgive

19   me.

20             I only ask you for a second chance so that I can go

21   back to my family and I'll never come back to the United

22   States.  That's all.  Thank you.

23             THE COURT:  Thank you.  Okay, so as I indicated, the

24   Guidelines in this case, which are advisory, would call for a

25   sentence between 30 -- sorry, between 24 months at the low end

1   and 30 months at the high end absent a departure.  The Defense

2   has requested a below Guideline sentence of 12 months.

3            I've considered the relevant factors set out by

4   Congress at 18 U.S. Code §3553(a), including the advisory

5   guidelines range in an effort to ensure that I impose a

6   sentence that is sufficient, but not greater than necessary to

7   comply with the purposes of sentencing.

8            Those purposes include the need for the sentence to

9   reflect the seriousness of the crime, promote respect for the

10  law, provide just punishment for the offense, and deter

11  criminal conduct both by the Defendant sitting before me and

12  others also who might seek to engage in this type of crime in

13  the future.

14           I have also, of course, considered the nature and

15  circumstances of the offense and the history and

16  characteristics of the Defendant.

17           So let me just mention what I think are some of the

18  aggravating factors here, which are the factors calling for a

19  higher sentence, and then, mention as well some of the factors

20  calling for a lower sentence.

21           So, on the aggravating side, we're talking about a

22  substantial drug weight here, a number that was actually very

23  close to the threshold for the next row on the drug quantity

24  table.

25           We -- as we just discussed, me and Mr. Padden, I will

1  not assume that the Defendant has committed the offense of

2  illegal re-entry under Title 18 or the criminal statutes of the

3  United States Code, but it is the case that he entered the

4  United States illegally.  So illegal entry if not illegal

5  re-entry.

6          And that obviously shows disregard for the laws of

7  this country.  We have what appears to be fairly organized and

8  substantial in scale narcotics trafficking here.

9          On the mitigating side of the spectrum, it is clear

10  that Mr. Luna Cruz has engaged in gainful employment in the

11  United States, legitimate work, not just narcotics trafficking,

12  so that's point 1.

13          Point 2, the fact that Mr. Luna Cruz is a meaningful

14  and high quality contributor to the life of his family back in

15  Mexico comes through clearly to me in the sentencing

16  submissions that I perceived.

17          And point 3, as Mr. Padden pointed out, the last year

18  at the MDC, even if it was not quite as brutal as the, you

19  know, time earlier in the core of the Covid pandemic, it has

20  still not been ideal.

21          And I don't think there's any question that a year

22  spent up until now at the MDC was harder time than a year in

23  ideal circumstances at the MDC, whatever that would look like.

24          So, in this district, the mean sentence for people

25  being sentenced under this Guideline in this criminal history

1  category, the mean is 25 months.  The median is 11.  It's

2  actually a pretty wide disparity between median and mean, which

3  suggests that there are a handful of outliers on the high side.

4         Having assessed the particular facts of this case and

5  in light of all of the relevant §3553(a) factors, I sentence

6  Mr. Luna Cruz to 15, 1-5, months of incarceration.

7         My expectation is that assuming Mr. Luna Cruz has

8  received credit for good time, which a person is eligible for

9  if they have a -- if they're subject to a sentence in excess of

10  1 year, that he may receive a 15 percent discount or up to a 15

11  percent discount for that good time, which would render the

12  sentence in the very close vicinity of time served.

13         And I'm mindful as I say that that Mr. Luna Diaz will

14  spend -- sorry, Mr. Luna Cruz will spend additional time in

15  immigration custody as part of the deportation process here.

16         I also as I indicated will impose a term of

17  Supervised Release of 2 years.  It shall be -- well, Mr. Luna

18  Cruz should be subject to all the mandatory conditions

19  of -- can you hear me?  Okay, thank you.

20         So, I will sentence Mr. Luna Cruz to a term of

21  Supervised Release of two years during which you shall be

22  subject to all of the mandatory conditions of sentencing and

23  also the following special conditions.

24         That he shall cooperate with and abide by all

25  legitimate instructions of the immigration authorities.

1          That if he is removed from the country, the Defendant

2    may not, may not re-enter the United States illegally.

3          And I will specifically indicate that it is not my

4    wish or expectation that the Defendant be kept in the United

5    States for purposes of serving any term of Supervised Release.

6          I find that these conditions are reasonably related

7    to the nature and circumstances of the offense.  Two, the

8    history and characteristics of the Defendant.  And to the need

9    to afford adequate deterrence and protect the public among

10   other things, as well as the need to provide the Defendant with

11   correctional treatment in the most effective manner.

12         Based on the information presented, Mr. Luna Cruz is

13   excused from the mandatory drug testing provision of 18 U.S.

14   Code §3583.

15         However, he may be requested to submit to drug

16   testing to ensure compliance with the conditions of his term of

17   Supervised Release.

18         There's no forfeiture being sought here.  And as to a

19   fine, I -- the Probation Department is not recommending a fine

20   and I will not impose one because there's no indication that

21   the Defendant has the ability to pay.

22         Likewise, there's no restitution sought in this case.

23   There is, however, a special assessment of $100, which I do

24   impose now.

25         I find that the sentence is sufficient but not

1    greater than necessary to comply with the purposes of

2    sentencing.

3            Does the Government have a motion with respect to the

4    still pending Count 2 of the indictment?

5            MS. GUPTA:  Yes, Your Honor.  The Government moves to

6    dismiss Count 2 of the indictment.

7            THE COURT:  Okay, that motion is granted at this

8    point.

9            Mr. Luna Cruz, you may appeal your conviction if you

10   believe that your guilty plea was somehow unlawful or

11   involuntary or if there's some other fundamental defect in the

12   proceedings that was not waived by your guilty plea.  And under

13   certain circumstances, a Defendant also has the right to appeal

14   his or her sentence.

15           Any notice of appeal must be filed within 14 days of

16   the entry of judgment or within 14 days of the filing of a

17   notice of appeal by the Government, whichever comes later.

18           And if requested, the Clerk will prepare and file a

19   notice of appeal on your behalf.  If you cannot afford to pay

20   the cost of any appeal or for appellate counsel, you will have

21   the right to apply for leave to appeal *in forma pauperis*, which

22   is Latin and means you can apply to have the Court waive the

23   filing fee.  On appeal, you may also apply for court-appointed

24   counsel.

25           There is a pending motion from the Defendant to seal

1    the sentencing submission in this case.  Given that it speaks

2    at length to the Defendant's family, that includes medical

3    information, does the Government have a position on that

4    motion?

5            MS. GUPTA:  We have no objection, Your Honor.

6            THE COURT:  Okay, I will grant that motion.

7            Mr. Padden, from the Defense perspective, are there

8    any other matters to resolve on this case?

9            MR. PADDEN:  Can't think of anything else, Judge.  We

10   appreciate your consideration.

11           THE COURT:  Thank you.

12           And Mr. -- sorry, Ms. Gupta, anything else from the

13   Government's perspective?

14           MS. GUPTA:  No, Your Honor, thank you.

15           THE COURT:  All right, then I will respectfully

16   direct the Court Reporter to produce the transcript of today's

17   proceeding.  That concludes these proceedings.

18           Mr. Luna Cruz, I wish you well in the future.  Good

19   luck with your family and your community going forward when you

20   get back to Mexico.  Thank you all.

21           MS. GUPTA:  Thank you.

22       (Proceedings concluded at 11:19 a.m.)

23

24

25

1                              **CERTIFICATE**

2

3

4              I, Chris Hwang, court approved transcriber, certify

5      that the foregoing is a correct transcript from the official

6      electronic sound recording of the proceedings in the above-

7      entitled matter.

8

9

10

11

12

13      _____              January 6, 2023

14      Chris Hwang                       Date

15      Court Reporter

16

17

18

19

20

21

22

23

24

25